**RECORD NO. 16-6278**

In The

# United States Court Of Appeals
## For The Fourth Circuit

### JAMES LESTER ROUDABUSH, JR.,

*Plaintiff – Appellant,*

v.

### F. MILANO, Captain; RICHARDSON; RYAN STERN; D. LAWHORNE, Sheriff; GRAHAM, Counselor; MS. HILTON, CDUSM; STEARNS, Chief,

*Defendants – Appellees.*

**and**

C. M. HILTON, U.S.D.J.; R. B. SMITH,

*Defendants.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT NORFOLK**

————————————

## BRIEF OF APPELLANT

————————————

**John J. Korzen, Director**
**Matthew D. Cloutier, Third-Year Law Student**
**James Lathrop, Third-Year Law Student**
WAKE FOREST UNIVERSITY
  SCHOOL OF LAW
**P.O. Box 7206**
**Reynolda Station**
**Winston-Salem, NC  27109**
**(336) 758-5832**

*Counsel for Appellant*

*Gibson*Moore Appellate Services, LLC
206 East Cary Street ♦ P.O. Box 1460 (23218) ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

# TABLE OF CONTENTS

**Page:**

TABLE OF AUTHORITIES .................................................................. iii

JURISDICTIONAL STATEMENT ......................................................1

STATEMENT OF THE ISSUE PRESENTED ......................................1

STATEMENT OF THE CASE ............................................................2

SUMMARY OF THE ARGUMENT ...................................................5

ARGUMENT ...................................................................................7

    I.     THE DISTRICT COURT ERRED IN DISMISSING
          ROUDABUSH'S EQUAL PROTECTION, CIVIL
          CONSPIRACY, AND DUE PROCESS CLAIMS .............................7

          A.     Standard of Review ..................................................7

          B.     Discussion ...............................................................7

               1.    Introduction........................................................7

               2.    The district court erred in dismissing Roudabush's
                   § 1983 claims...................................................9

                   a.    Roudabush adequately alleges an equal
                       protection claim under § 1983.............................11

                       i.    Roudabush alleges that he was
                          intentionally treated differently from
                          similarly situated inmates ..........................11

                     ii.    Defendants' discriminatory treatment
                          is subject to strict scrutiny.........................12

i

b.   Roudabush adequately alleges a civil
conspiracy claim under § 1983 ...........................14

c.   Roudabush adequately alleges a procedural
due process claim under § 1983 ..........................17

CONCLUSION .................................................................................19

REQUEST FOR ORAL ARGUMENT .................................................................20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s):**

**Cases:**

*American Mfrs. Mut. Ins. Co. v. Sullivan*,
526 U.S. 40 (1999) ........................................................................ 10

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................ 8

*Ballinger v. North Carolina Agricultural Extension Service*,
815 F.2d 1001 (4th Cir. 1987) ................................................ 15, 16

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................... 7, 8, 16, 19

*Bolling v. Sharpe*,
347 U.S. 497 (1954) ...................................................................... 11

*Brewster of Lynchburg, Inc. v. Dial Corp.*,
33 F.3d 355 (4th Cir. 1994) .......................................................... 18

*Buschi v. Kirven*,
775 F.2d 1240 (4th Cir. 1985) ...................................................... 15

*Cochran v. Morris*,
73 F.3d 1310 (4th Cir. 1996) ........................................................ 15

*Edwards v. City of Goldsboro*,
178 F.3d 231 (4th Cir. 1999) .......................................................... 7

*Erickson v. Pardus*,
551 U.S. 89 (2007) .................................................................... 8, 12

*Estelle v. Gamble*,
429 U.S. 97 (1976) .................................................................... 8, 16

*Feldman v. Law Enf't Assocs. Corp.*,
752 F.3d 339 (4th Cir. 2014) .......................................................... 1

*Fisher v. Univ. of Tex. at Austin,*
 133 S. Ct. 2411 (2013)................................................................13

*Gordon v. Leeke,*
 574 F.2d 1147 (4th Cir. 1978) ......................................8, 9, 16, 18

*Grason v. Mayview State Hosp.,*
 293 F.3d 103 (3d Cir. 2002) ...........................................................9

*Hinkle v. City of Clarksburg,*
 81 F.3d 416 (4th Cir. 1996) ....................................................14, 16

*Johnson v. California,*
 543 U.S. 499 (2005)...........................................................12, 13, 14

*King v. Rubenstein,*
 825 F.3d 206 (4th Cir. 2016) ...................................................7, 11

*Lesser v. Braniff Airways, Inc.,*
 518 F.2d 538 (7th Cir. 1975) ........................................................16

*Lytle v. Doyle,*
 326 F.3d 463 (4th 2003) ...............................................................10

*Morrison v. Garraghty,*
 239 F.3d 648 (4th Cir. 2001) ........................................................11

*Presley v. City of Charlottesville,*
 464 F.3d 480 (4th Cir. 2006) ..........................................................8

*Republican Party of N. Carolina v. Martin,*
 980 F.2d 943 (4th Cir. 1992) ..........................................................1

*Shaw v. Murphy,*
 532 U.S. 223 (2001)................................................................ 13-14

*Shooting Point v. Cumming,*
 243 F. Supp. 2d 536 (E.D. Va. 2003) ...........................................16

*Turner v. Safley,*
 482 U.S. 78 (1987)...................................................................9, 14

*United States v. Armstrong*,
    517 U.S. 456 (1996)..................................................................11

*United States v. Bell*,
    954 F.2d 232 (4th Cir. 1992) ............................................14, 15

*United States v. Burgos*,
    94 F.3d 849 (4th Cir. 1996) ....................................................15

*Weidman v. Exxon Mobil Corp.*,
    776 F.3d 214 (4th Cir. 2015) ....................................................8

*West v. Atkins*,
    487 U.S. 42 (1988)..................................................................10

*Wilkinson v. Austin*,
    545 U.S. 209 (2005)................................................................18

*Williams v. Collier*,
    357 F. App'x 532 (4th Cir. 2009)..........................................19

*Wolff v. McDonnell*,
    418 U.S. 539 (1974)..........................................................17, 18

**Statutes:**

28 U.S.C. § 1291 .............................................................................1

28 U.S.C. § 1331 .............................................................................1

28 U.S.C. § 1915 .............................................................................1

42 U.S.C. § 1983 ......................................................................*passim*

**Constitutional Provisions:**

U.S. Const. amend. V.........................................................................*passim*

U.S. Const. amend. XIV, § 1 ....................................................................11

**Rules:**

Fed. R. Civ. P. 8(e)..................................................................................9

Fed. R. Civ. P. 12(b)(6)............................................................. 1, 7, 18-19

## JURISDICTIONAL STATEMENT

The district court had federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiff James L. Roudabush, Jr. alleges a claim under 42 U.S.C. § 1983 for violations of his rights under the Equal Protection Clause and Due Process Clause of the Constitution.

This Court has jurisdiction under 28 U.S.C. § 1291. The district court dismissed Roudabush's complaint for failure to state a claim under 28 U.S.C. § 1915 and entered final judgment on January 26, 2016. (JA 83). Roudabush timely filed a notice of appeal to this Court on February 22, 2016. (JA 84).

## STATEMENT OF THE ISSUE PRESENTED

The Federal Rules of Civil Procedure and established Supreme Court precedent provide that complaints—especially those filed by *pro se* plaintiffs—should be construed liberally to "do justice." *Feldman v. Law Enf't Assocs. Corp.*, 752 F.3d 339, 348 (4th Cir. 2014). This guiding principle requires that courts considering motions to dismiss under Rule 12(b)(6) evaluate only "the sufficiency of a complaint" and not "resolve contests surrounding the facts [or] the merits of a claim." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). The issue presented is whether the district court's merits analysis and dismissal of Roudabush's claims violate this mandate.

## STATEMENT OF THE CASE

This case concerns the efforts of a *pro se* plaintiff to pursue his constitutional rights to equal protection and due process. More specifically, it concerns alleged discriminatory policies and practices of the Alexandria Adult Detention Center ("ADC"). Plaintiff James L. Roudabush, Jr. is a white, openly homosexual inmate who was housed at the ADC. (JA 11-23). Over a period of several months in 2013, Roudabush bore witness to numerous instances of discriminatory conduct directed toward him and other inmates. These instances took the form of consistent patterns of conduct within the ADC, as well as more isolated actions by prison authorities. (JA 11-14, 20-21). These events culminated with Roudabush's involuntary isolation in protective custody. Despite Roudabush alleging all of this in his *pro se* complaint, the district court concluded that Roudabush's "only assertion that relates to the treatment [he] himself received is that he was moved from his cell, where the television was visible, to a corner cell, where the television was not visible." (JA 32).

In the months leading up to Roudabush's transfer to protective custody, he regularly observed black inmates receiving preferential treatment from prison administrators. (JA 12-14, 20-21). This preferential treatment took many forms. In some cases, black inmates received benefits not available to white and Hispanic inmates; for example, Ms. Rudy Graham brought food from outside the prison to

give to a black inmate.  (JA 12).  That same inmate also received extra food from the kitchen four days per week, again provided by Ms. Graham.  (JA 12).  The benefits provided to black inmates were not limited to the provision of extra food.  Within the ADC, certain inmates were selected to serve as trustees: functionally "inmate bosses."  (JA 12).  This group of trustees was almost exclusively black.  (JA 13).

Furthermore, black inmates were excused from many of the prison rules.  While black inmates in the ADC were allowed "out for rec all day," the recreation time of white and Hispanic inmates was strictly limited.  (JA 13, 20).  By way of example, the black inmates housed in Cells 481 and 486 were permitted to remain outside for recreation at will for a period of four days.  (JA 14).  While black inmates were permitted to choose their hours for recreation time as well as the other inmates with whom they went outside, white and Hispanic inmates were permitted to go outside only within a two-hour window.  (JA 13, 21)  Those hours were 2:00-4:00 AM.  (JA 21).

Not content with this disparity in treatment, Roudabush began to voice his concerns to the prison authorities, specifically to Deputy Ryan Stearns.  (JA 12).  Rather than addressing Roudabush's concerns, prison authorities responded with hostility and retaliation.  After Roudabush filed his grievance with Deputy Stearns, he was denied his already minimal recreation time.  (JA 12, 18).  Defendants'

response did not end there. Roudabush was next threatened by a black inmate and accused of racism by Sergeant Larry Richardson. (JA 11-14). Both Deputy Stearns and Sgt. Richardson witnessed the inmate's threat, but neither took action. (JA 11-14).

The confrontations stemming from Roudabush's concerns came to a head on September 23, 2013. On that day, Deputy Stearns, Sgt. Richardson, Ms. Graham, and Sheriff Dana Lawhorne met and "formulated a plan" to move Roudabush from his cell to worse conditions in protective custody. (JA 12). While all the details of this plan remain unknown, the results are apparent. Within only a few days, Roudabush was removed from his cell and was isolated from other inmates—this transfer to protective custody failed to comply with the policies established by the "ADC handbook." (*See* JA 11, 15, 21). While housed in the harsh conditions of protective custody, Roudabush hand wrote and filed the *pro se* complaint serving as the basis for this action. (JA 11, 16).[1]

In its dismissal order, the district court held that Roudabush failed to state claims under the Equal Protection and Due Process clauses. (JA 81). The court acknowledged that Roudabush alleges race discrimination. (JA 81). Nevertheless,

---

[1] Roudabush's *pro se* filings were handwritten and in pencil, and as a result parts of some pages were not very legible on PACER as as reproduced by the printing company that produced the Joint Appendix, which tried to reproduce them as clearly as possible.

the court stated that Defendants' actions should be "presumed to be valid and will be sustained" so long as there is "a rational relationship between the disparity of treatment and some legitimate governmental purpose." (JA 81). The court dismissed Roudabush's due process claim by concluding that the "Fifth Amendment is not applicable to this matter." (JA 75). Finally, after dismissing Roudabush's remaining claims, the court dismissed his request for appointment of counsel as moot. (JA 81). The district court did not grant Roudabush leave to amend.

The district court accordingly entered judgment for Defendants. (JA 81). Roudabush timely filed his notice of appeal to this Court on February 22, 2016. (JA 84).

## SUMMARY OF THE ARGUMENT

The district court's dismissal of Roudabush's equal protection, conspiracy, and due process claims is wholly inconsistent with well-established pleading standards and with the duty of district courts to carefully review the civil rights claims of *pro se* plaintiffs. This Court should correct the district court's error.

The district court erred in three ways. First, the district court failed to apply the proper pleading standard to Roudabush's equal protection claim. In dismissing this claim, the district court employed an analysis more akin to summary judgment than to the liberal pleading standards appropriate for a motion to dismiss.

Roudabush alleges numerous instances of discriminatory treatment. Instead of determining whether these allegations are sufficient to survive a motion to dismiss, the district court—in violation of established precedent—evaluated the merits of Roudabush's claim of racial discrimination under rational basis review.

Second, the district court relied solely on inapposite case law in dismissing Roudabush's civil conspiracy claim. One of the cases involved claims of criminal conspiracy, a charge that must be proven beyond a reasonable doubt; the others were resolved on summary judgment, a standard harder for Roudabush to meet than the one applicable to Defendants' motion to dismiss.

Third, the district court dismissed Roudabush's due process claim with a single, baseless statement that "the Fifth Amendment is not applicable to this matter." This bald assertion is a far cry from the examination and analysis that this Court requires of district courts.

The district court ultimately failed to apply the well-established standards for measuring the sufficiency of Roudabush's complaint and instead applied a heightened, merits based standard or, in the case of the due process claim, no standard at all. For these reasons, this Court should reverse.

# ARGUMENT

## I. THE DISTRICT COURT ERRED IN DISMISSING ROUDABUSH'S EQUAL PROTECTION, CIVIL CONSPIRACY, AND DUE PROCESS CLAIMS.

### A. Standard of Review

A district court's grant of a motion to dismiss is reviewed *de novo*. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). A Rule 12(b)(6) motion serves only to test the sufficiency of a complaint; it should not "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a motion to dismiss, a complaint need only "contain enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

### B. Discussion

#### 1. Introduction

The district court's dismissal of Roudabush's claims vitiates the promises and protections of the Equal Protection and Due Process clauses. The district court erred by ignoring fundamental principles governing *pro se* pleadings and by employing a full-blown—and erroneous—merits analysis based on the pleadings alone. The district court's dismissal ignored two foundational pleading principles: *pro se* complaints must be construed liberally, and courts should be especially solicitous of civil rights claims brought by *pro se* plaintiffs.

7

First, it is well settled that *pro se* complaints must be construed liberally. *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976) (noting that *pro se* complaints must be held to "less stringent standards than formal pleadings drafted by lawyers"); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). Even in the face of *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), these principles have endured. *See Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 222 (4th Cir. 2015) (affirming the principle that *pro se* complaints should not be dismissed summarily "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). What is more, this liberal construction applies to all complaints, no matter "how inartfully pleaded." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

In addition to the general mandate that *pro se* complaints be construed liberally, this Court has admonished district courts to be "especially solicitous" of *pro se* plaintiffs alleging civil rights violations. *Gordon*, 574 F.2d at 1151; *see also Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (explaining that a district court "must not dismiss [a] complaint unless it appears to a certainty that the plaintiff would not be entitled to relief *under any legal theory which might plausibly be suggested by the facts alleged*" (citation omitted)).

District courts should examine *pro se* complaints to determine whether a plaintiff has alleged facts that might "provide a basis for recovery under any of the

8

civil rights acts or heads of jurisdiction in the federal arsenal for redress of constitutional deprivations." *Gordon*, 574 F.2d at 1151. As a result, a *pro se* plaintiff's failure to comply with technical pleading requirements should not "defeat the vindication" of any constitutional guarantees that were alleged—"however inartfully"—to have been infringed. *Id.* At bottom, this Court has made it clear that district courts have the responsibility to ensure that *pro se* plaintiffs' constitutional rights are protected and that justice is done.[2] *Id.*; *see* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

> **2.** **The district court erred in dismissing Roudabush's § 1983 claims.**

"Prison walls do not form a barrier separating prison inmates from the protections of the constitution." *Turner v. Safley*, 482 U.S. 78, 84 (1987). This principle, coupled with this Court's established rules for construing *pro se* complaints, compel the conclusion that Roudabush's § 1983 claims survive Defendants' motion to dismiss. Roudabush's complaint alleges equal protection,

---

[2] The district court dismissed Roudabush's claims without informing him that he might amend his complaint. While it appears that this Court has not directly addressed the issue, other circuits have stated that "[w]hen a plaintiff does not seek leave to amend a deficient complaint after a defendant moves to dismiss it, the court must inform the plaintiff that he has leave to amend within a set period of time, unless amendment would be inequitable or futile." *See, e.g.*, *Grason v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

due process, and civil conspiracy claims under § 1983.  Section 1983 provides, in

pertinent part:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of Columbia,
> subjects, or causes to be subjected, any citizen of the United States or
> other person within the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the Constitution and laws,
> shall be liable to the party injured in an action at law, suit in equity, or
> other proper proceeding for redress.

42 U.S.C. § 1983 (2012).

To prevail on a 1983 claim, a plaintiff must show (1) the deprivation of a

constitutional right, and (2) that the deprivation was committed under color of state

law.  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999); *Lytle v.*

*Doyle*, 326 F.3d 463, 471 (4th 2003).  Employment by the state is "generally

sufficient to render the defendant a state actor."  *West v. Atkins*, 487 U.S. 42, 49

(1988).  Here, all named Defendants are employees of the state prison system and

thus acted under color of state law.  (JA 9, 26).  As discussed below, Roudabush's

complaint sufficiently alleges that Defendants (1) violated his constitutional right

to equal protection by discriminating against him on the basis of his race and

sexual orientation, (2) engaged in a civil conspiracy in violation of section 1983,

and (3) denied him procedural due process by depriving him of his liberty interests

without a hearing.

10

### a. Roudabush adequately alleges an equal protection claim under § 1983.

The Equal Protection Clause[3] "secure[s] every person within the State's jurisdiction against intentional and arbitrary discrimination." *King v. Rubenstein*, 825 F.3d 206, 220 (4th Cir. 2016). To survive a motion to dismiss on an equal protection claim, a plaintiff must allege facts showing that (1) "he has been intentionally treated differently from others with whom he is similarly situated," and (2) the disparate treatment was not "justified under the requisite level of scrutiny." *Id.* (quoting *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001)). The complaint in this case does just that.

### i. *Roudabush alleges that he was intentionally treated differently from similarly situated inmates.*

Roudabush alleges facts showing that he has been treated differently from other similarly situated inmates. Specifically, he alleges that white and Hispanic prisoners' outdoor recreation time was severely limited. According to Roudabush, white and Hispanic inmates were only allowed outdoors between the hours of 2:00

---

[3] The Equal Protection Clause provides that "no State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. Its safeguards apply against the Federal Government through "the equal protection component of the Due Process Clause of the Fifth Amendment." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (citing *Bolling v. Sharpe*, 347 U.S. 497, 500 (1954)).

and 4:00 AM while black inmates were freely allowed recreation time throughout the day.  (JA 20).

Moreover, Roudabush does not simply allege one single discriminatory policy.  Rather, he alleges a range of discriminatory actions, conditions, and policies, giving rise to a culture of racial discrimination.  For example, Roudabush alleges that black prisoners were brought outside food and given extra food (JA 12); black prisoners were given priority to move to the top of the trustee list, a position accompanied by certain additional privileges (JA 13); and guards consistently turned a blind eye toward the threats and violent acts of black prisoners toward Roudabush.  (JA 12-13).  These allegations are more than sufficient to satisfy the "liberal pleading standards," especially given that "a judge must accept as true all of the factual allegations contained in the complaint." *Erickson*, 551 U.S. at 94.

### ii.    *Defendants' discriminatory treatment is subject to strict scrutiny.*

Few equal protection principles are more fundamental than the strict scrutiny applied to classifications based on race.  *Johnson v. California*, 543 U.S. 499, 505 (2005) (affirming that "all racial classifications [imposed by government] . . . must be analyzed by a reviewing court under strict scrutiny").  Contrary to the district court's assertion, this rule holds true in the prison context.  *Id.* (holding that strict scrutiny was the proper standard of review for a prison's decision to segregate

prisoners by race). Indeed, strict scrutiny remains the proper standard because, as the Supreme Court has recognized, a prisoner does not surrender his constitutional right to equal protection at the prison gates. *Id.* Consequently, when government decisions, including those in a prison setting, "touch upon an individual's race or ethnic background, he is entitled to a judicial determination that the burden he is asked to bear on that basis is precisely tailored to serve a compelling governmental interest." *Fisher v. Univ. of Tex. at Austin*, 133 S. Ct. 2411, 2417 (2013). Thus, Roudabush's race discrimination claim is subject to strict scrutiny.

The district court's decision flouts this rule. In stark contrast to the strict scrutiny that the Supreme Court has mandated for race discrimination claims, the district court applied a watered-down version of rational basis review. (JA 79). After first erroneously declaring that "[o]utside the prison context, Plaintiff's claims would be subject to rational basis review," the district court compounded its error by asserting that "when equal protection challenges arise in the prison context, courts must adjust the level of scrutiny to ensure that prison officials are afforded the necessary discretion to operate their facilities in a safe and secure manner." (JA 79). The Supreme Court foreclosed this reasoning in *Johnson*, where it squarely held that strict scrutiny applies in the prison context. 543 U.S. at 507. Unlike claims concerning free speech or marriage, which may be subject to regulations that further a "legitimate penological interest," *see Shaw v. Murphy*,

13

532 U.S. 223, 225 (2001); *Turner*, 482 U.S. at 89-90; the Court in *Johnson* emphasized the importance of maintaining strict scrutiny in the prison setting, where the "government's power is at its apex" and the rights of inmates are most vulnerable. 543 U.S. at 511. Indeed, the Court explicitly "reject[ed] the *Turner* standard for racial classifications in prisons because it would make rank discrimination too easy to defend." *Id.* at 499.

In short, Roudabush has sufficiently alleged racial discrimination, and his equal protection claim is subject to strict scrutiny.

### b. Roudabush adequately alleges a civil conspiracy claim under § 1983.

The district court also dismissed Roudabush's conspiracy claim, concluding that the complaint "contain[ed] nothing to support [his] assertions." (JA 80). However, the cases relied on by the district court are inapposite. The district court first cited to this Court's decision in *United States v. Bell*, 954 F.2d 232 (4th Cir. 1992) for the proposition that "to establish the element of conspiracy, a meeting of the minds must be established." (JA 80). Critically, however, this rule pertains only to *criminal* conspiracy—which requires proof beyond a reasonable doubt. *Id.* at 236. Here, Roudabush has brought a claim of *civil* conspiracy. Plaintiffs alleging civil conspiracy "need not produce direct evidence of a meeting of the minds." *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996).

14

Moreover, this Court later noted that *Bell* "cannot be squared with [the] tenets of conspiracy law." *United States v. Burgos*, 94 F.3d 849, 860 (4th Cir. 1996).

The district court's reliance on this Court's decisions in *Cochran v. Morris*, 73 F.3d 1310 (4th Cir. 1996); *Buschi v. Kirven*, 775 F.2d 1240 (4th Cir. 1985); and *Ballinger v. North Carolina Agricultural Extension Service*, 815 F.2d 1001 (4th Cir. 1987) is similarly misplaced. Not one of these cases involved comparable allegations and, more importantly, all three cases came before this Court after summary judgment. Thus, the relevant standard of proof in those cases was substantially higher than the standard faced by Roudabush's *pro se* complaint. Specifically, in *Cochran*, this Court determined that "Cochran's complaint was primarily deficient . . . because he failed to assert any actual injury resulting from prison officials' conduct." *Cochran v. Morris*, 73 F.3d 1310, 1317 (1996). Unlike the *Cochran* plaintiff, Roudabush alleges concrete injuries in the form of numerous instances of discriminatory conduct.

In *Buschi* and *Ballinger*, this Court determined that the respective plaintiffs had not provided sufficient facts to survive motions for summary judgment. *Buschi*, 775 F.2d at 1248 (noting that "[i]t is well settled that mere allegations of conspiracy, backed up by no factual showing of participation in a conspiracy, are insufficient to support such an action against a motion for summary judgment based on affidavits establishing the absence of any participation"); *Ballinger*, 815

F.2d at 1007 (same). In sum, none of these cases provides any support for dismissing Roudabush's conspiracy claim on a motion to dismiss.

At the motion to dismiss stage, Roudabush need only provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This bar is lowered further by well-established rules for the construction of *pro se* complaints. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). These standards, as they apply to civil conspiracy claims, require only that a plaintiff allege facts showing that defendants "acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in the plaintiff's' deprivation of a constitutional right." *Hinkle*, 81 F.3d at 421. The critical element is deprivation because "the gist of the cause of action is the deprivation and not the conspiracy." *Shooting Point v. Cumming*, 243 F. Supp. 2d 536, 537 (E.D. Va. 2003) (citing *Lesser v. Braniff Airways, Inc.*, 518 F.2d 538, 540 n.2 (7th Cir. 1975)).

Roudabush's *pro se* complaint has alleged such a deprivation. Specifically, Roudabush alleges that Defendants—in an effort to silence his concerns as to the instances of discrimination he had witnessed—met to formulate a plan. This plan involved using inmates to threaten Roudabush. These threats then served as a justification for pulling Roudabush from his cell and isolating him in protective custody.

16

### c. Roudabush adequately alleges a procedural due process claim under § 1983.

In his complaint, Roudabush also alleges that he was placed in protective custody with "no hearing" and without regard to governing ADC policy, a "process [that] was unconstitutional" under the Fifth Amendment. (JA 15). The district court dismissed this claim with a single sentence: "the Fifth Amendment is not applicable to this matter." (JA 75). That conclusory statement is wrong, and it may stem from Defendants' erroneous suggestion below that "[t]he Fifth Amendment has four clauses; the (1) Grand Jury Clause, (2) Double Jeopardy Clause, (3) Self-Incrimination Clause, and (4) Takings Clause. U.S. Const. amend. V. Plaintiff's Complaint alleges no cognizable violations of any of the clauses." (JA 30) (internal citation omitted). Glaringly absent from this list is the Due Process Clause—the basis of Roudabush's claim. (*See* JA 59) ("Under the Due Process Clause . . . [b]efore my rights (privileges) are taken away, I must be given a hearing.").

The Due Process Clause of the Fifth Amendment provides that no person may "be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. With respect to procedural due process, the Supreme Court "has consistently held that some kind of hearing is required at some time before a person is finally deprived" of one of those protected interests. *Wolff v. McDonnell*, 418 U.S. 539, 557-58 (1974). This protection unquestionably applies

17

to claims brought by inmates like Roudabush. *Id.* at 556 ("[p]risoners may also claim the protections of the Due Process Clause"); *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (explaining that the Due Process Clause protects a prisoner's "liberty interest" in avoiding "atypical and significant hardship within the correctional context").

Applying these rules, Roudabush's complaint states a claim for violation of procedural due process. He alleges that he was transferred to protective custody. He further alleges that this transfer did not comport with the policies in the "ADC handbook." In other words, Roudabush alleges that he was deprived of protected liberty interests without a hearing—the very essence of a procedural due process claim. Thus, the Fifth Amendment is very much "applicable to this matter," contrary to the district court's bald assertion otherwise. (JA 75). Dismissing Roudabush's due process claim with a single sentence falls far short of the duty of district courts to protect the constitutional rights of *pro se* litigants. *See Gordon*, 574 F.2d at 1151. Moreover, this unexplained ruling "not only denies to the appellate court the tools of review but conceals what the court did and why and leaves the appeals court, like the proverbial blind hog, scrambling through the record in search of an acorn." *Brewster of Lynchburg, Inc. v. Dial Corp.*, 33 F.3d 355, 367 (4th Cir. 1994) (citation omitted). And it flies in the face of Rule

12(b)(6)'s recognized purpose—testing the legal sufficiency of a complaint. Dismissal in this fashion can hardly be called a test.

\*   \*   \*

Although the district court's dismissal order intones several pleading precedents, the hair-trigger standard it ultimately applied bears little resemblance to them.  Roudabush has certainly alleged "enough facts to state a claim to relief that is plausible on its face," and his claims survive "even if it strikes a savvy judge that actual proof of [the underlying] facts is improbable, and that recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556, 570.

## CONCLUSION

For the foregoing reasons, James L. Roudabush, Jr. respectfully requests this Court to reverse the district court's judgment, remand his claims, and authorize the district court to appoint counsel to represent him for discovery and other proceedings. *See Williams v. Collier*, 357 F. App'x 532, 536 (4th Cir. 2009).

## REQUEST FOR ORAL ARGUMENT

Pursuant to this Court's Rule 34(a), James L. Roudabush, Jr. respectfully states that oral argument is warranted. This case presents important legal and practical issues regarding the application of pleading standards to incarcerated *pro se* plaintiffs alleging civil rights violations. Thus, Roudabush respectfully submits that oral argument would materially aid the decisional process.

Respectfully submitted this 17th day of April 2017.

/s/     John J. Korzen
John J. Korzen, Director
Matthew D. Cloutier, Third-Year Law Student
James Lathrop, Third-Year Law Student
Wake Forest University School of Law
Appellate Advocacy Clinic
P.O. Box 7206 Reynolda Station
Winston-Salem, NC 27109-7206
(336) 758-5832

*Appointed Appellate Counsel for Plaintiff*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with type-volume limits because, excluding the parts of the document exempted by Fed. R. App. P. 32(f) (cover page, disclosure statement, table of contents, table of citations, statement regarding oral argument, signature block, certificates of counsel, addendum, attachments):

this document contains 4,327 words.

2.    This document complies with the typeface requirements because:

This document has been prepared in a proportional spaced typeface using Microsoft Word in 14 point Times New Roman.

Dated:  April 17, 2017                       /s/ John J. Korzen
                                             John J. Korzen, Director

                                             *Counsel for Appellant*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on April 17, 2017, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to all the registered CM/ECF users.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Shelly N. Gannon
Shelly N. Gannon
*Gibson*Moore Appellate Services, LLC
206 East Cary Street
P.O. Box 1460 (23218)
Richmond, VA  23219
(804) 249-7770 – Telephone
(804) 249-7771 – Facsimile
shelly@gibsonmoore.net